# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00490

BRIAN HOLTSCLAW, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

STAKE CENTER LOCATING, LLC, a Utah limited liability company,

Defendant.

## PLAINTIFFS' FIRST AMENDED CLASS ACTION & JURY DEMAND

### SUMMARY

1. Brian Holtsclaw ("Holtsclaw") brings this class action to recover unpaid wages and other damages from Stake Center Locating, LLC ("SCL").

2. SCL employed Holtsclaw as one of its Hourly Utility Locators (defined below) in Colorado.

3. Holtsclaw and the other Hourly Utility Locators regularly work more than 40 hours in a workweek.

4. But SCL also fails to pay them overtime wages at the proper premium rate.

5. Specifically, SCL pays Holtsclaw and the other Hourly Utility Locators taxable "auto pay" allowances, which SCL intentionally excludes when calculating their regular rates of pay for overtime purposes (SCL's "auto pay policy").

6. Additionally, SCL pays Holtsclaw and the other Hourly Utility Locators non-discretionary bonuses, including but not limited to ticket completion bonuses, sign-on bonuses, stake

completion bonuses, and production bonuses, without including these payments in their regular rates of pay for the purpose of calculating overtime (SCL's "bonus pay scheme").

7. Thus, SCL's uniform auto pay policy and bonus pay scheme violate the CWCA and CMWA by depriving Holtsclaw and the other Hourly Utility Locators of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for the hours they work over 40 in a week.

## JURISDICTION & VENUE

8. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b).

9. This Court has general personal jurisdiction over SCL based on SCL's substantial operations in Colorado and its substantial contacts with, and conduct directed toward, Colorado that form the basis of this class action.

10. Specifically, SCL employed Holtsclaw and the other Hourly Utility Locators in Colorado and failed to pay them proper overtime wages for their work performed in Colorado.

11. Venue is proper pursuant 28 U.S.C. § 1391(B)(2) because SCL can be found in Larimer County, and a substantial part of the events or omissions giving rise to this action occurred in Larimer County.

12. Specifically, SCL maintains an office in Loveland, Colorado, and Holtsclaw primarily worked for SCL in Larimer County.

## PARTIES

13. Holtsclaw is an adult individual residing in Fort Collins, Larimer County, Colorado.

14. Holtsclaw worked for SCL as a Utility Locator in and around Fort Collins, Larimer County, Colorado from approximately April 2021 until November 2021.

15. At all relevant times, Holtsclaw was SCL's covered "employee" within the meaning of the CWCA, CMWA, and COMPS Order. *See* C.R.S. § 8-4-101(5); C.C.R. 1103-1(1.5).

16. Throughout his employment, SCL classified Holtsclaw as non-exempt and paid him on an hourly basis.

17. Throughout his employment, SCL paid Holtsclaw taxable "auto pay" allowances that SCL intentionally excluded when calculating his regular rate for overtime purposes.

18. SCL further paid Holtsclaw non-discretionary bonuses but failed to include these payments in the regular rates of pay for the purpose of calculating overtime.

19. Holtsclaw brings this class action on behalf of himself and other similarly situated hourly, non-exempt SCL Utility Locators in Colorado who are subject to SCL's illegal auto pay policies and/or bonus pay scheme.

20. SCL pays each of these Utility Locators taxable auto pay allowances that SCL intentionally excludes when calculating their regular rates of pay for overtime purposes.

21. SCL further pays each of these Utility Locators non-discretionary bonuses but intentionally excludes these payments in the regular rates of pay for the purpose of calculating overtime.

22. Thus, SCL uniformly deprives these Utility Locators of overtime wages at the proper premium rate—based on all renumeration received—for all hours worked after 40 in a workweek in violation of the CWCA and CMWA.

23. The putative class of similarly situated employees is defined as:

> **All Colorado citizens who worked for SCL as an hourly Utility Locator in Colorado and received an auto pay allowance and/or bonus at any time during the past 3 years ("Hourly Utility Locators").**

24. The Hourly Utility Locators can be readily ascertained from SCL's business and personnel records.

25. SCL is a Utah corporation headquartered in Greensboro, North Carolina.

26. SCL is registered to do business in Colorado.

27. Indeed, SCL maintains an office in Loveland, Colorado.

28. At all relevant times, SCL transacted and conducted substantial business in Colorado.

29. At all relevant times, SCL was subject to the CWCA, CMWA, and COMPS Order because SCL was (and is) an "employer" within the meaning of the CWCA, CMWA and COMPS Order. *See* C.R.S. § 8-4-101(6); C.C.R. 1103-1(1.6).

30. SCL has filed an Answer. Defendant will be served this amended pleading through its attorney of record.

## FACTS

31. SCL bills itself as a utility "locating powerhouse"[1] that provides "utility locating services [to utility owners and operators] across the country[,]"[2] including in Colorado.

32. To meet its business objectives, SCL hires Utility Locators (including Holtsclaw and the other Hourly Utility Locators) to provide underground utility locating services to its clients in Colorado.

33. SCL uniformly classifies Holtsclaw and its other Hourly Utility Locators as non-exempt and pays them on an hourly basis.

34. Holtsclaw and the other Hourly Utility Locators regularly work more than 40 hours a week.

35. But SCL does not pay Holtsclaw and its other Hourly Utility Locators overtime at the proper premium rate.

[1] https://www.stakecenter.com/ (last visited April 23, 2025).
[2] https://www.stakecenter.com/service-areas/ (last visited April 23, 2025).

36. Instead, SCL uniformly subjects Holtsclaw and its other Hourly Utility Locators to its illegal auto pay policy, paying them taxable auto pay allowances that SCL intentionally excludes when calculating their regular rates of pay for overtime purposes.

37. Moreover, SCL pays Holtsclaw and its other Hourly Utility Locators non-discretionary bonuses, including but not limited to ticket completion bonuses, sign-on bonuses, stake completion bonuses, and production bonuses, that it fails to include in these employees' regular rates of pay for overtime purposes.

38. While exact job duties and precise locations may differ, Holtsclaw and the other Hourly Utility Locators are subject to SCL's same or similar illegal policies—SCL's auto pay policy and bonus pay scheme—for similar work.

39. For example, Holtsclaw worked for SCL as a Utility Locator in and around Fort Collins, Larimer County, Colorado from approximately April 2021 until November 2021.

40. Holtsclaw was SCL's hourly employee.

41. As a Utility Locator, Holtsclaw's primary responsibilities included locating network lines for gas, electrical, cable, and communications companies (SCL's clients) and identifying whether the utility owner's underground utilities conflict with proposed excavation locations.

42. Throughout his employment, SCL required Holtsclaw to record his work time through its uniform timekeeping and ticketing system.

43. Throughout his employment, Holtsclaw regularly worked more than 40 hours a week.

44. Indeed, Holtsclaw typically worked 10 hours a day for 6 to 7 days a week (or 60 to 70 hours a week).

45. Throughout his employment, SCL subjected Holtsclaw to its illegal auto pay policy.

46. Specifically, SCL paid Holtsclaw taxable auto pay allowances that SCL intentionally excluded when calculating his regular rate of pay for overtime purposes.

47. And SCL paid Holtsclaw non-discretionary bonuses that SCL intentionally excluded when calculating his regular rate of pay for overtime purposes.

48. Thus, under SCL's illegal auto pay policy and bonus pay scheme, Holtsclaw did not receive overtime at rates not less than 1.5 times his regular rate of pay—based on all renumeration received—for his hours worked over 40 in a workweek in violation of the CWCA and CMWA.

49. SCL subjects its other Hourly Utility Locators according to the same illegal auto pay policy and bonus pay scheme it imposed on Holtsclaw.

50. Like Holtsclaw, SCL pays its other Hourly Utility Locators on an hourly basis.

51. Like Holtsclaw, SCL requires its other Hourly Utility Locators to report their hours worked to SCL for approval via SCL's uniform timekeeping and ticketing system.

52. SCL's records show that, like Holtsclaw, the other Hourly Utility Locators regularly work more than 40 hours a week.

53. Indeed, like Holtsclaw, the other Hourly Utility Locators typically work 10 hours a day for 6 to 7 days a week (or 60 to 70 hours a week).

54. SCL uniformly subjects its other Hourly Utility Locators to the same policies, procedures, and strict operational and productivity requirements that it imposed on Holtsclaw.

55. Indeed, SCL uniformly requires Holtsclaw and the other Hourly Utility Locators to complete their work tickets in a timely manner per SCL's policy.

56. And SCL closely supervises and tracks Holtsclaw's and the other Hourly Utility Locators' productivity to ensure they comply with SCL's uniform expectations.

57. In fact, because labor costs are SCL's greatest expense, SCL closely monitors the hours and overtime Holtsclaw and the other Hourly Utility Locators work through its uniform ticketing system.

58. And SCL uniformly pressures and expects Holtsclaw and the other Hourly Utility Locators to complete as many tickets as possible.

59. .

60. SCL subjects its other Hourly Utility Locators to the same illegal auto pay policy it imposed on Holtsclaw.

61. Specifically, SCL uniformly pays Holtsclaw and its other Hourly Utility Locators a taxable automobile allowance.

62. SCL includes this automobile allowance in the total taxable amount it pays to Holtsclaw and the other Hourly Utility Locators on each paystub.

63. As a result, SCL represents to Holtsclaw and the other Hourly Utility Locators that the automobile allowance it pays them constitutes part of their wages.

64. Likewise, SCL represents to the IRS Holtsclaw's and the other Hourly Utility Locators' automobile allowance constitutes wages.

65. Thus, SCL knowingly classifies Holtsclaw's and the other Hourly Utility Locators' automobile allowance as wages.

66. Although SCL classifies this automobile allowance as wages, SCL intentionally excludes Holtsclaw's and the other Hourly Utility Locators' "auto pay" when calculating their regular rates of pay for overtime purposes.

67. Moreover, SCL uniformly pays Holtsclaw and its other Hourly Utility Locators non-discretionary bonuses, including but not limited to ticket completion bonuses, sign-on bonuses, stake completion bonuses, and production bonuses.

68. But SCL uniformly does not include these non-discretionary bonuses when calculating their regular rate of pay for overtime purposes.

69. SCL knew that all wages must be considered remuneration for purposes of calculating Holtsclaw's and the other Hourly Utility Locators' overtime rates.

70. Thus, under SCL's illegal auto pay policy and bonus pay scheme, Holtsclaw and the other Hourly Utility Locators are not paid overtime wages at rates not less than 1.5 times their regular rates of pay—based on all renumeration received—for the hours they work over 40 in a week in willful violation of the CWCA and CMWA.

## CLASS ACTION ALLEGATIONS

71. Holtsclaw incorporates all other paragraphs by reference.

72. Holtsclaw brings his claims as a class action on behalf of himself and the other Hourly Utility Locators pursuant to C.R.C.P. 23.

73. Like Holtsclaw, the other Hourly Utility Locators were victimized by SCL's illegal auto pay policy and bonus pay scheme.

74. Other Hourly Utility Locators worked with Holtsclaw and indicated they were paid in the same manner, performed similar work, and were subject to SCL's same illegal auto pay policy and bonus pay scheme.

75. Based on his experience with SCL, Holtsclaw is aware SCL's illegal auto pay policy and bonus pay scheme were imposed on the other Hourly Utility Locators.

76. The putative class of Hourly Utility Locators include more than 40 members.

77. Thus, the Hourly Utility Locators are so numerous that the joining of all potential class members in one lawsuit is impracticable.

78. The Hourly Utility Locators are similarly situated in the most relevant respects.

79. Even if their specific job titles or precise locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime pay for all hours worked over 40 in a week.

80. Therefore, the specific job titles or precise job locations of the various Hourly Utility Locators do not prevent class treatment.

81. Rather, the Hourly Utility Locators are held together by SCL's uniform auto pay policy and bonus pay scheme, which systematically deprived Holtsclaw and the other Hourly Utility Locators of overtime wages at the proper premium rate for all hours worked after 40 in a workweek.

82. SCL's failure to pay proper overtime wages as required by Colorado wage laws results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Hourly Utility Locators.

83. SCL's records reflect the number of hours the Hourly Utility Locators recorded they worked each week.

84. SCL's records also show it paid the Hourly Utility Locators taxable automobile allowances that it excluded when calculating their regular rates of pay for overtime purposes.

85. SCL's records also show it paid the Hourly Utility Locators non-discretionary bonuses, including but not limited to production bonuses, that it excluded when calculating their regular rates of pay for overtime purposes.

86. The back wages owed to Holtsclaw and the other Hourly Utility Locators can therefore be calculated using the same formula applied to the same records.

87. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SCL's records, and there is no detraction from the common nucleus of liability facts.

88. Therefore, the issue of damages does not preclude class treatment.

89. Holtsclaw's experiences are therefore typical of the experiences of the other Hourly Utility Locators.

90. Holtsclaw has no interest contrary to, or in conflict with, the other Hourly Utility Locators.

91. Like each Hourly Utility Locator, Holtsclaw has an interest in obtaining the unpaid wages owed to them under Colorado law.

92. Holtsclaw and his counsel will fairly and adequately protect the interests of the other Hourly Utility Locators.

93. Holtsclaw retained counsel with significant experience in complex class action litigation.

94. A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

95. Absent this class action, many Hourly Utility Locators likely will not obtain redress for their injuries, and SCL will reap the unjust benefits of violating Colorado wage laws.

96. Further, even if some of the Hourly Utility Locators could afford individual litigation against SCL, it would be unduly burdensome to the judicial system.

97. Indeed, the multiplicity of actions would create a hardship for the Hourly Utility Locators, the Court, and SCL.

98. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Utility Locators' claims.

99. The questions of law and fact that are common to each Hourly Utility Locator predominate over any questions affecting solely the individual members.

100. Among the common questions of law and fact are:

a. Whether SCL failed to include all renumeration the Hourly Utility Locators received (including their automobile allowances and non-

discretionary bonuses) when calculating their regular rates of pay for overtime purposes in violation of the CWCA and COMPS Order;

b. Whether SCL's auto pay policy deprived the Hourly Utility Locators of overtime wages at the premium rate required by the CWCA and COMPS Order;

c. Whether SCL's bonus pay scheme deprived the Hourly Utility Locators of overtime wages at the premium rate required by the CWCA and COMPS Order;

d. Whether SCL's decision not to pay the Hourly Utility Locators overtime wages at the proper premium rate—based on *all* renumeration received—was made in good faith; and

e. Whether SCL's violations were willful.

101. Holtsclaw knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

102. As part of its regular business practices, SCL intentionally, willfully, and repeatedly violated Colorado wage laws with respect to Holtsclaw and the other Hourly Utility Locators.

103. SCL's illegal auto pay policy and bonus pay scheme deprived Holtsclaw and the other Hourly Utility Locators of overtime wages at the proper premium rate for all hours worked after 40 in a workweek, which they are owed under Colorado law.

104. Accordingly, all of C.R.C.P. 23's requirements are satisfied, and Holtsclaw's proposed class of Hourly Utility Locators merits certification.

**SCL'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF COLORADO WAGE LAWS**

105. Holtsclaw incorporates all other paragraphs by reference.

106. SCL knew it was subject to the CWCA's and CMWA's respective overtime provisions.

107. SCL knew the CWCA and CMWA required it to pay non-exempt employees, including Holtsclaw and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 12 in a workday and 40 in a workweek.

108. SCL knew Holtsclaw and the other Hourly Utility Locators were non-exempt employees entitled to overtime pay.

109. SCL knew it paid Holtsclaw and the other Hourly Utility Locators on an hourly basis.

110. SCL knew Holtsclaw and each Hourly Utility Locators worked over 40 hours in at least one workweek during the 3 years before this Complaint was filed because SCL required these employees to record their hours worked using its timeclock and ticketing system.

111. SCL knew the CWCA and CMWA required it to pay employees, including Holtsclaw and the other Hourly Utility Locators, for all hours these employees performed compensable work.

112. SCL's failure to pay Holtsclaw and the other Hourly Utility Locators all their earned wages for all hours worked was neither reasonable, nor was its decision not to pay these employees all their earned wages for all hours worked made in good faith.

113. SCL knew the CWCA and CMWA required it to include all renumeration employees, including Holtsclaw and the other Hourly Utility Locators, received when calculating their regular rates of pay for overtime purposes.

114. SCL knew it paid Holtsclaw and the other Hourly Utility Locators taxable automobile allowances.

115. SCL knew Holtsclaw's and the other Hourly Utility Locators' auto pay constituted part of their wages.

116. SCL knew it paid Holtsclaw and the other Hourly Utility Locators non-discretionary bonuses, including but not limited to production bonuses.

117. Nonetheless, SCL intentionally excluded Holtsclaw's and the other Hourly Utility Locators' auto pay allowances and non-discretionary bonuses when calculating their regular rates of pay for overtime purposes.

118. SCL's failure to pay Holtsclaw and the other Hourly Utility Locators overtime wages at the proper premium rate (based on *all* renumeration received) was neither reasonable, nor was its decision to exclude Holtsclaw's and the other Hourly Utility Locators' auto pay and non-discretionary bonuses when calculating their regular rates for overtime purposes made in good faith.

119. SCL knowingly, willfully, and/or in reckless disregard carried out its illegal auto pay policy and bonus pay scheme that deprived Holtsclaw and the other Hourly Utility Locators of overtime wages at the proper premium rate for all hours worked after 40 in a workweek in violation of the CWCA and CMWA.

120. SCL knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated Colorado wage laws.

121. Indeed, SCL has been repeatedly sued previously by employees for failing to pay proper wages in violation of the FLSA and analogous state wage and hour laws, including for the same illegal auto pay policy that is subject of this lawsuit. *See*, *e.g.*, *Kinsey v. Stake Center Locating, Inc.*, No. 161185/2023 (N.Y. Sup. Ct., New York Cnty.); *Castille v. Stake Center Locating, LLC*, No. D-202-CV-2023-08034 (N.M. 2d Dist. Ct.); *Wolfe v. Stake Center Locating, LLC*, No. 230402591 (P.A. 1st Dist. Ct.); *Loonsfoot v. Stake Center Locating, LLC*, No. 3:23-CV-3171-DWD (S.D. Ill.); *Walker v. Stake Center Locating, LLC*, No. 2:21-CV-00183-JCB (D. Utah).

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE CWCA
### (CLASS ACTION)

122. Holtsclaw incorporates all other paragraphs by reference.

123. Holtsclaw brings his CWCA overtime claim on behalf of himself and the other Hourly Utility Locators pursuant to C.R.C.P. 23.

124. SCL's conduct violates the CWCA, as implemented by the COMPS Order. *See* C.R.S. §§ 8-4-101, *et seq.*; C.C.R. 1103-1.

125. At all relevant times, SCL was subject to the CWCA and the COMPS Order because SCL was (and is) an "employer" within the meaning of the CWCA and COMPS Order. *See* C.R.S. § 8-4-101(6); C.C.R. 1103-1(1.6).

126. At all relevant times, SCL employed Holtsclaw and the other Hourly Utility Locators as its covered "employees" within the meaning of the CWCA and COMPS Order. *See* C.R.S. § 8-4-101(5); C.C.R. 1103-1(1.5).

127. The CWCA (as implemented by the COMPS Order) requires employers, like SCL, to pay non-exempt employees, including Holtsclaw and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked over 12 in a workday and 40 in a workweek. *See* C.C.R. 1103-1(4.1.1).

128. Holtsclaw and the other Hourly Utility Locators are entitled to overtime pay under the CWCA and COMPS Order.

129. SCL violated, and is violating, the CWCA (as implemented by the COMPS Order) by failing to pay Holtsclaw and the other Hourly Utility Locators overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked over 12 in a workday and 40 in a workweek. *See* C.C.R. 1103-1(4.1.1)

130. SCL's unlawful conduct harmed Holtsclaw and the other Hourly Utility Locators by depriving them of the proper premium overtime wages they are owed.

131. Accordingly, Holtsclaw and the other Hourly Utility Locators are entitled to recover their unpaid overtime wages. *See* C.R.S. § 8-4-109(3); C.C.R. 1103-1(8.1).

132. Because SCL's failure to pay these overtime wages was willful, SCL is also liable to Holtsclaw and the other Hourly Utility Locators for treble damages in the amount of three times their unpaid overtime wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(3)(b)(II).

133. Finally, Holtsclaw and the other Hourly Utility Locators are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110; C.C.R. 1103-1(8.1).

## Count II

### Failure to Pay Earned Wages Under the CWCA
### (Class Action)

134. Holtsclaw incorporates all other paragraphs by reference.

135. Holtsclaw brings his CWCA earned wages claim on behalf of himself and the other Hourly Utility Locators pursuant to C.R.C.P. 23.

136. SCL's conduct violates the CWCA. *See* C.R.S. §§ 8-4-101, *et seq*.

137. At all relevant times, SCL was subject to the CWCA because SCL was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

138. At all relevant times, SCL employed Holtsclaw and the other Hourly Utility Locators as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

139. The CWCA requires employers, like SCL, to pay employees, including Holtsclaw and the other Hourly Utility Locators, all wages earned, due, and owing on their regular payday and following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

140. SCL violated, and is violating, the CWCA by failing to pay Holtsclaw and the other Hourly Utility Locators all their wages earned for all the hours of work they performed for SCL's benefit on their regular payday and/or following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

141. SCL's unlawful conduct harmed Holtsclaw and the other Hourly Utility Locators by depriving them of the earned wages they are owed.

142. Accordingly, Holtsclaw and the other Hourly Utility Locators are entitled to recover their unpaid earned wages. *See* C.R.S. § 8-4-109(3).

143. Because SCL's failure to pay these earned wages was willful, SCL is also liable to Holtsclaw and the other Hourly Utility Locators for treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

144. Finally, Holtsclaw and the other Hourly Utility Locators are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

## JURY DEMAND

145. Holtsclaw demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Holtsclaw, individually and on behalf of the other Hourly Utility Locators, seeks the following relief:

a. An Order certifying a class action pursuant to C.R.C.P. 23;

b. An Order appointing Holtsclaw and his counsel to represent the interests of the Hourly Utility Locators;

c. An Order authorizing prompt notice of this litigation to all Hourly Utility Locators;

d. An Order finding SCL liable to Holtsclaw and the other Hourly Utility Locators their unpaid overtime wages owed under the CWCA, plus treble damages in the amount of three times their unpaid wages or $3,000, whichever is greater;

e. Judgment awarding Holtsclaw and the other Hourly Utility Locators all unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the CWCA and CMWA;

f. An Order awarding attorneys' fees, costs, and expenses;

g. Pre- and post-judgment interest at the highest applicable rates; and

h. Such other and further relief as may be necessary and appropriate.

Dated: June 17, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

*/s/ Andrew W. Dunlap*
Michael A. Josephson
Andrew W. Dunlap
Richard M. Schreiber
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**LAW OFFICES OF BRIAN D. GONZALES PLLC**
Brian D. Gonzales
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Phone: (970) 214-0562
bgonzales@coloradowagelaw.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR HOLTSCLAW & THE HOURLY UTILITY LOCATORS**

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served upon all attorneys of records this 16th day of June 2025, via the Court's electronic filing system.

*/s/ Andrew W. Dunlap*
Andrew W. Dunlap